UNITED SERVICE PROTECTION CORPORATION, and American Bankers Insurance Company of Florida, Plaintiffs,

v.

L. Scott LOWE and Sylvia M. Lowe, Defendants.

No. CIV.A.6:04–CV–999.

United States District Court, S.D. West Virginia, Parkersburg Division.

Jan. 12, 2005.

F. Richard Hall, Spilman Thomas & Battle, Parkersburg, WV, Walter D. Willson, Wells Marble & Hurst, Jackson, MS, for Plaintiffs.

Richard A. Hayhurst, Parkersburg, WV, for Defendants.

## ORDER

GOODWIN, District Judge.

Pending before the court are the defendants' Motion to Dismiss or, in the Alternative, for Abstention and Stay of Proceedings [Docket 8]; the plaintiffs' Motion to Compel Arbitration [Docket 9]; the plaintiffs' Motion to Strike Reply Memorandum, or, in the Alternative, Motion for Leave to File Surrebuttal [Docket 16]; and the plaintiffs' Motion for Entry of Order Compelling Arbitration [Docket 17]. All pending motions are now ripe for decision. For the following reasons, the defendants' Motion to Dismiss or, in the Alternative, for Abstention and Stay of Proceedings [Docket 8] is **DENIED**. The plaintiffs' Motion to Compel Arbitration [Docket 9] is **GRANTED in part and DENIED in part**. The plaintiffs' Motion to Strike Reply Memorandum [Docket 16] is GRANTED because the reply memorandum in question [Docket 15] was untimely filed, and accordingly the accompanying Motion for Leave to File Surrebuttal is **DENIED** as moot. Finally, the plaintiffs' Motion for Entry of Order Compelling Arbitration [Docket 17] is **DENIED** as moot in accordance with this Order.

## I. Background

This dispute originates from the purchase of a Vehicle Service Agreement for a Pontiac Grand Prix automobile. The defendants, L. Scott Lowe and Sylvia M. Lowe (the Lowes), bought this Service Agreement from the plaintiff United Service Protection Corporation (USPC) on April 14, 2002, in Marietta, Ohio. The Service Agreement cost $1516.00 and covered a variety of different kinds of repairs. The Service Agreement further provided that its coverage would expire on April 14, 2007, or when the car's odometer reached 85,000 miles, whichever came first.

On or about March 2, 2004, the Lowes allegedly contracted with Warner Pontiac, Inc., a Pontiac dealership and service facility located in West Virginia, for certain repairs to the Lowes' automobile. At that time, the parties were still bound by the Service Agreement, and USPC paid the cost of repairs minus the deductible. At some time following the repairs, but still during March of 2004, the engine in the Lowes' Pontiac failed and the car allegedly needed a complete engine replacement. USPC allegedly denied any responsibility for coverage of these repairs, which have an estimated cost of $7,500. Instead, USPC blamed Warner Pontiac for the engine breakdown. USPC contends that Warner Pontiac negligently repaired the vehicle and, as a result, caused the engine failure. Accordingly, USPC argues that it is not liable for the cost of replacing the engine because the Service Agreement provides that "damages or any loss resulting from faulty or negligent auto repair work or from the installation of defective parts" are excluded from coverage.

On July 8, 2004, the Lowes filed suit in state court against USPC, the American Bankers Insurance Company of Florida[1] (ABIC), and Warner Pontiac, Inc. In this underlying action, the Lowes seek compensatory and punitive damages based on the incidents described above. Roughly two months later, on September 15, 2004, USPC and ABIC filed a Complaint and Petition to Compel Arbitration [Docket 1] with this court. They filed this action based on an arbitration provision contained in the Service Agreement and pursuant to the Federal Arbitration Act (FAA). 9 U.S.C. § 1, *et seq.* On October 27, the Lowes filed a Motion to Dismiss or, in the Alternative, for Abstention and Stay of Proceedings [Docket 8]. On November 10, the plaintiffs filed the instant Motion to Compel Arbitration [Docket 9], in which they request that this court enter an order compelling the Defendants to submit all claims in the state court action to binding arbitration. They further request that this court enjoin the Circuit Court of Wood County, West Virginia, from proceeding any further in the underlying action.

## II. Discussion

Because the parties' respective motions involve overlapping issues, they can easily be considered together. The motions present three questions to the court. First, must I abstain from hearing this action due to the parallel state court proceedings? Second, if abstention is unwarranted, must I compel arbitration between the parties in accordance with the terms of the Service Agreement? Third, and finally, if arbitration must be compelled, must I also enjoin the parallel state court proceedings? I will consider these questions in turn.

### A. Abstention

As an initial matter, I must decide whether abstention is warranted in this case. The Lowes have advanced several arguments in support of abstention. They argue that the arbitration clause in question involves important issues of state law; that these questions are properly presented before the state court in the underlying action; and that this court should therefore defer to the parallel proceedings that are already in progress. While these arguments possess some initial appeal, they are fundamentally misplaced in light of federal abstention doctrine.

1. American Bankers Insurance Company of Florida is allegedly responsible for insuring the Service Agreement described above.

■■■ "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This principle is the bedrock of abstention doctrine. The Supreme Court has carved out several limited exceptions to this fundamental principle and delineated the circumstances in which it is appropriate for a federal court to stay or dismiss its own proceedings in favor of parallel actions in state court. In their motion, the Lowes summarily list a variety of cases in which different abstention doctrines have been applied.[2] This case, however, falls squarely within the analysis set forth in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* in which the Supreme Court applied *Colorado River* abstention doctrine to a set of factual circumstances virtually identical to the instant case. 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).[3]

In *Moses H. Cone,* a North Carolina hospital entered into an agreement with a construction contractor for the enlargement of the hospital building. *Moses H. Cone,* 460 U.S. at 4, 103 S.Ct. 927. The agreement contained a provision providing for the mandatory arbitration of all claims and disputes arising out of the agreement. *Id.* at 5, 103 S.Ct. 927. Disputes did in fact arise regarding alleged extra costs incurred by the contractor during the con-

struction process, but rather than engage in arbitration, the hospital filed a declaratory judgment action in North Carolina state court. *Id.* at 6–7, 103 S.Ct. 927. Less than a month later, the contractor filed a separate action in federal court seeking to compel arbitration pursuant to the FAA. *Id.* at 7, 103 S.Ct. 927. Upon motion by the hospital, the district court stayed the federal case "pending resolution of the state-court suit suit because the two suits involved the identical issue of the arbitrability of [the contractor's] claims." *Id.*

The contractor appealed this ruling, and the Court of Appeals for the Fourth Circuit heard argument en banc. *Id.* at 8, 103 S.Ct. 927. The Fourth Circuit then reversed the district court, remanded the case, and instructed the district court to enter an order to compel arbitration. *Id.* The Supreme Court agreed to hear the case to determine "the propriety of the District Court's decision to stay this federal suit out of deference to the parallel litigation brought in state court." *Id.* at 13, 103 S.Ct. 927.

■■■ The Court first concluded that *Colorado River* "provides persuasive guidance in deciding this question" and analyzed the case under the rubric of *Colorado River* abstention doctrine. *Id.* In particular, the Court found that abstention under *Colorado River* was only warranted when sup-

---

**2.** The Lowes rely primarily on the abstention doctrine first described in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This reliance, however, is misplaced. As the Supreme Court has recently stated, *Burford* abstention is appropriate when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar" or when federal adjudication "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.,* 517

U.S. 706, 726–27, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Neither of these issues are presented in the instant case.

**3.** The Fourth Circuit has stated that in order for *Colorado River* abstention to be considered, the case must meet the "threshold requirement [that] there ... be parallel proceedings in state and federal court." *Gannett Co. v. Clark Constr. Group,* 286 F.3d 737, 741 (4th Cir.2002). In this case, the parties agree that there is an underlying action currently pending in the Circuit Court of Wood County, West Virginia.

ported by the existence of exceptional circumstances. *Id.* at 19, 103 S.Ct. 927. The Court described six factors that control this determination. These factors are:

> (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Vulcan Chem. Techs., Inc. v. Barker,* 297 F.3d 332, 341 (4th Cir.2002) (citing *Moses H. Cone,* 460 U.S. at 19–27, 103 S.Ct. 927). In *Moses H. Cone,* the Court determined that none of these factors indicated exceptional circumstances that would justify abstention.

■ Applying these factors to the case at hand, I first find that neither of the first two factors are relevant. As in *Moses H. Cone,* there is no question regarding "jurisdiction over any res or property, nor is there any contention that the federal forum [is] any less convenient to the parties than the state forum." 460 U.S. at 19, 103 S.Ct. 927. In fact, both courts in question are located here in West Virginia. Accordingly, I look next to the third factor.

Under the third factor, it is true that a court order compelling the Lowes to arbitrate their claims against the plaintiffs will result in piecemeal litigation, insofar as

their claims against Warner Pontiac (not a party to the Service Agreement) will remain pending in state court. Considering the principles underlying abstention, however, the court concludes that the relevant question for abstention purposes is not simply whether granting the plaintiff's relief will result in piecemeal litigation, but whether it is the *federal court's* involvement in the case that will lead to piecemeal litigation. In this case, the plaintiffs are free to bring a motion to compel arbitration in state court, as they have done in federal court. If the state court compelled the Lowes to arbitrate their claims against the plaintiffs, the resulting piecemeal litigation would be the same as if this court were to order arbitration. To put it another way, the threat of piecemeal litigation in this case does not arise from the possibility of federal court involvement, but rather arises from the existence of the arbitration clause in the Service Agreement, which may require the Lowes to arbitrate their claims against the plaintiffs but which will not require arbitration of their claims Warner Pontiac.

■ As the Supreme Court stated in *Moses H. Cone,* this patchwork litigation occurs "because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." [4] 460 U.S. at 20, 103 S.Ct. 927. Accordingly, abstention is called for only

---

4. On a related issue, the Lowes have also argued that this case must be dismissed pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure because Warner Pontiac has not been joined in this action. The Lowes contend that Warner Pontiac is a necessary party in this case because it is a defendant in the underlying action, and therefore complete

relief cannot be obtained in its absence. This argument, however, "merely re-states the 'piecemeal litigation' argument which the Supreme Court rejected in *Moses H. Cone,*" and accordingly has no merit. *Snap–On Tools Corp. v. Mason,* 18 F.3d 1261, 1267 (5th Cir. 1994).

when it is the interplay between the parallel federal and state court actions that causes the risk of piecemeal litigation, not when that danger exists independent of the forum in which the motion to compel arbitration is considered. Because this court's exercise of jurisdiction does not give rise to any new danger of piecemeal litigation, this factor does not weigh in favor of abstention.

The fourth factor that I must consider is the relative progress of the state and federal cases. As a matter of comity, the more the state has invested its time and resources into the proceedings, the less appropriate it is for a federal court to intervene and disrupt those proceedings. *See Gannett*, 286 F.3d at 748 (noting that abstention is based in part on principles of comity). Here, the state-court action was filed approximately two months before the federal action. Nevertheless, the Supreme Court has clearly stated that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927. Accordingly, the mere fact that this matter was first filed in state court is not controlling. In this case, no substantial proceedings have taken place in the state court, and there has not been a significant expenditure of time and resources. The Lowes have made no allegations that the plaintiffs engaged in undue delay before filing in federal court. Instead, the federal action was filed shortly after the state-court action commenced, and has been prosecuted promptly. In contrast, when I found the existence of exceptional circumstances in *Eastern Associated Coal Corporation v. Skaggs*, the underlying case had been pending in state court for three years before the federal action to compel arbitration was filed. 272 F.Supp.2d. 595, 601 (S.D.W.Va.2003). Accordingly, I find that the fourth factor does not weigh in favor of abstention because no substantial progress has been made in the underlying action.

The fifth factor requires an examination of whether federal or state law controls the merits of the decision. Here, as in *Moses H. Cone*, this factor weighs against abstention. Section 2 of the FAA embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state or procedural policies to the contrary ... and create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927. There is a preliminary question of whether the parties reached a legally binding agreement to arbitrate, and this question is governed by state contract law. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir.2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). In addition, this factor is not controlling because the state and federal courts possess concurrent jurisdiction to determine arbitrability questions under the FAA. Nevertheless, "the presence of federal-law issues must always be a major consideration weighing against" a finding of exceptional circumstances that would justify abstention. Accordingly, I find that the fifth factor does not support the surrender of jurisdiction in this case.

The sixth and final factor necessitates an inquiry into the ability of the state court to adequately protect the parties' rights. Here, I have no reason to doubt the adequacy of the state forum. As just noted, state courts have concurrent jurisdiction over claims under the FAA. I have no doubts regarding the ability of the West Virginia state courts to adjudicate this matter, and accordingly I find that the sixth factor weighs in favor of abstention in this case.

In making my final determination regarding abstention, I must be mindful that "the decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927. Here, I find that the third, fourth, and fifth factors are the most relevant to the facts of the instant case. In accordance with these factors, I have found that there is no independent danger of piecemeal litigation, there has been no substantial progress achieved in the underlying state-court action, and there are substantial issues of federal law involved in this case. Accordingly, I find that abstention is unwarranted and decline to surrender jurisdiction in this matter.

### B. Arbitration

■ Because I have found no reason to abstain from deciding this action, I must now consider whether to compel the parties to submit to arbitration. "In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute.'" *Labor Ready*, 303 F.3d at 500–01. In considering these factors, a district court must be "mindful of the 'clear federal directive in support of arbitration.'" *Id.* at 500 (quoting *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir.2001)).

■ In this case, the existence of these factors has not been contested. A dispute clearly exists, as evidenced by the underlying state-court action, which satisfies the first factor. Under the second factor, there is a written agreement between the parties that purports to cover the dispute. The arbitration provision provides: "Any and all disputes, controversies or claims of any kind and nature between the parties hereto arising out of, or in any way related to, the validity, interpretation, performance or breach of any provision of this Agreement, and upon which a settlement has not been reached, shall be resolved exclusively by arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. 1 *et seq.*" The dispute in question is the underlying state-court action, and that lawsuit is based upon the obligations of USPC under the Service Agreement. Accordingly, the second factor is met.

The transaction bears a relationship to interstate commerce in accordance with the third factor, because it was entered into between the Lowes, who are citizens of West Virginia, and USPC, which is a business incorporated in Delaware. *See Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (finding that the interstate commerce requirement must be interpreted broadly, to the full extent of Congress' power under the Commerce Clause). In addition, the Service Agreement itself was signed in Ohio, and the repair incidents underlying this action occurred in West Virginia. Finally, the fourth factor is satisfied because the Lowes have refused to arbitrate this dispute, as evidence by their opposition to the instant motion to compel arbitration.

I therefore find that all four of the necessary factors have been met. Accordingly, and in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927, the

plaintiffs' motion to compel arbitration is **GRANTED**.

### C. Injunctive Relief

Because I have found that the arbitration provision of the Service Agreement must be enforced in accordance with the FAA, I must address one final issue. In addition to their motion to compel arbitration, the plaintiffs have asked this court to enjoin the state court proceedings in the underlying dispute. This aspect of the motion raises serious concerns of federalism and comity.

■ "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. These three exceptions have been narrowly construed and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). The Supreme Court has not yet determined the appropriateness of injunctive relief in cases to compel arbitration. *See Moses H. Cone*, 460 U.S. at 26 n. 32, 103 S.Ct. 927 ("We need not address whether a federal court might stay a state-court suit pending arbitration.").

■ In this case, I find that none of the three exceptions to the Anti–Injunction Act apply. First, contrary to the arguments of the plaintiffs, § 3 of the FAA provides no independent authority for en-joining parallel state-court proceedings. The plain language of § 3 provides only that "the court in which such suit is pending" shall stay the proceedings before it if arbitration is required. There is no reference to injunctive relief against underlying state-court proceedings.[5] 9 U.S.C. § 3. Similarly, neither of the two remaining exceptions presents a compelling reason to enjoin the state court in this case. The Supreme Court has noted that the phrases "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" both "imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coastline*, 398 U.S. at 295, 90 S.Ct. 1739.

Such an extreme situation is not present in the instant case. Instead, I have no reason to believe that an injunction is necessary to shield my decision to compel arbitration. Our dual system has developed effective preclusion doctrines to assist both state and federal courts in upholding and enforcing the other's judgments. "The court believes that the parties and the [state court] will likely conform their conduct to the expectations of law," and finds that an injunction of the state-court proceedings is unnecessary at the present time. *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Coe*, 313 F.Supp.2d 603, 616 (S.D.W.Va.2004) (Faber, CJ). Accordingly, the Motion to Compel Arbitration [Docket 9] is **DENIED** to the extent it seeks a stay of

---

5. For an excellent discussion of this and other issues relating to injunctions against state courts in the arbitration context, see *Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions Against State Courts*, 147 U. Pa. L.Rev. 91, 114 (1998) ("Nothing in either the language or the legislative history of the FAA shows that Congress intended to allow federal courts to enjoin state actions to support the enforcement of arbitration agreements.").

the underlying action in the Circuit Court of Wood County, West Virginia.

### III. Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss or, in the Alternative, for Abstention and Stay of Proceedings [Docket 8] is **DENIED**. The plaintiffs' Motion to Compel Arbitration [Docket 9] is **GRANTED in part and DENIED in part**. The plaintiffs' Motion to Strike Reply Memorandum [Docket 16] is **GRANTED** because the reply memorandum in question [Docket 15] was untimely filed, and accordingly the accompanying Motion for Leave to File Surrebuttal is **DENIED** as moot. Finally, the plaintiffs' Motion for Entry of Order Compelling Arbitration [Docket 17] is **DENIED** as moot in accordance with this Order.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.